CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 27 2018

JULIA C. DUDLEY, CLERK
BY: s/ H. MCDONALD
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GARY WENTZ,<br><br>　　Plaintiff,<br><br>v.<br><br>CULPEPER MEMORIAL HOSPITAL, INC., d/b/a Novant Health UVA Health System Culpeper Medical Center, CHRISTOPHER McCULLOUGH, NEVILLE FERNANDO, ASHLEY BRUSHWOOD, BRENDA BROCK, and ROBBIE SMITH,<br><br>　　Defendants. | Civil Action No.   3:18CV00059 |

## COMPLAINT

Plaintiff Gary Wentz ("Wentz"), by counsel, hereby files his Complaint against Defendants Culpeper Memorial Hospital, Inc., d/b/a Novant Health UVA Health System Culpeper Medical Center ("CMH"), Christopher McCullough ("McCullough"), Neville Fernando ("Fernando"), Ashley Brushwood ("Brushwood"), Brenda Brock ("Brock"), and Robbie Smith ("Smith") (collectively "Defendants"), and alleges as follows:

### NATURE OF THE ACTION

1.　Wentz brings this action pursuant to 42 U.S.C. § 1983 and Virginia common law, to seek redress for an egregiously sexually invasive, unjustified, compelled surgery that Wentz endured at the hands of Defendants.

2.　On July 30, 2016, McCullough, with the assistance of Fernando, Brushwood, Brock, and Smith, and with the explicit approval of CMH, penetrated Wentz's anus and rectum

with multiple different implements to remove two small bags of heroin.  The invasion was not medically necessary, because Wentz was not in distress and less invasive means of removal were readily available.  At the time of the invasion, Wentz was mentally competent to refuse medical treatment, and Wentz repeatedly refused, first verbally, and then by physically resisting attempts to proceed with the invasion.  At all relevant times, Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983.

3. Wentz now seeks damages for violation of his Eighth Amendment right to be free of cruel and unusual punishment, violation of his Fourteenth Amendment right to refuse unwanted medical treatment, and for battery and civil conspiracy under Virginia law.

## PARTIES

4. Plaintiff Wentz is a citizen of Virginia.  At all relevant times, Wentz was an inmate at Central Virginia Regional Jail ("CVRJ"), in Orange, Virginia.

5. Defendant CMH is a Virginia corporation which operates a hospital at 501 Sunset Drive, Culpeper, Virginia 22701.  The term "CMH" is used interchangeably herein to refer to the Defendant corporation and the hospital it operates.  CMH explicitly authorized the invasion complained of herein.

6. Defendant McCullough is a general surgeon.  At all relevant times, McCullough was employed by or contracted to work for CMH.  McCullough performed the invasion complained of herein.

7. Defendant Fernando is an anesthesiologist.  At all relevant times, Fernando was employed by or contracted to work for CMH.  Fernando administered anesthesia during the invasion complained of herein.

8. Defendant Brushwood is a nurse. At all relevant times, Brushwood was employed by or contracted to work for CMH. Brushwood assisted in the invasion complained of herein.

9. Defendant Brock is a nurse. At all relevant times, Brock was employed by or contracted to work for CMH. Brock assisted in the invasion complained of herein.

10. Defendant Smith is a nurse. At all relevant times, Smith was employed by or contracted to work for CMH. Smith assisted in the invasion complained of herein.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Wentz's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

12. This Court has subject matter jurisdiction over Wentz's state-law claims pursuant to 28 U.S.C. § 1367 and 42 U.S.C. § 1988.

13. This Court has personal jurisdiction over Defendants because each Defendant resides in, works in, or otherwise maintains sufficient minimum contacts with this District.

14. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, because each Defendant is subject to personal jurisdiction in this District and a substantial part of the conduct giving rise to this action occurred within this District.

## FACTS

15. On July 29, 2016, Wentz turned himself in to CVRJ to complete a jail sentence, following a furlough. CVRJ officials and members of several law enforcement agencies were waiting there to confront Wentz, based on reports that Wentz would be attempting to smuggle heroin into the jail in his rectum.

16. Following an interview and strip search of Wentz, Brian Huffman ("Huffman"), deputy superintendent of CVRJ, ordered that Wentz be transported to CMH, citing concerns for Wentz's health.

17. Wentz arrived at the Emergency Department of CMH at approximately 5:56 p.m. on July 29, 2016.

18. Upon Wentz's arrival at CMH, and throughout his stay there, Wentz was restrained in handcuffs and leg shackles connected to a chain around his waist, and was guarded by two CVRJ correctional officers.

19. The CVRJ officers who transported Wentz to CMH reported to CMH staff that Wentz was suspected of having heroin in his rectum. They further reported that Wentz had been sweating when he arrived at CVRJ, that Wentz had vomited once while at CVRJ, and that dried blood had been observed in Wentz's underwear.

20. Wentz explained to CMH staff that he had been sweating upon arrival at CVRJ because he had just come indoors from the July heat, and that the blood was from a scrape to his buttock sustained while playing with his children. CMH staff did not ask Wentz about his having vomited at CVRJ. However, Wentz's single instance of vomiting at CVRJ was consistent with the sudden fear and stress arising from being confronted and accused of wrongdoing by a bevy of armed law enforcement officers from several different agencies immediately upon his entry into CVRJ.

21. Wentz did not sweat abnormally or vomit during his entire time at CMH. Wentz did not spontaneously bleed from his anus or rectum during his entire time at CMH, although he did suffer anal and rectal bleeding as a direct result of the invasion complained of herein.

22.     CMH staff examined Wentz in the Emergency Department and found him to have elevated blood pressure and pulse, which were not assessed to be an immediate medical emergency.  CMH staff assessed Wentz for the following conditions, and found them to be absent: fever; chills; weakness; excessive sweating; dementia; delirium; sedation; abnormal vision; pain, swelling, or bleeding of the ears, nose, or throat; abnormal breathing; chest pain; heart palpitations; abdominal pain; nausea; vomiting; diarrhea; constipation; jaundice; bloody stool; inability to urinate; bloody urine; joint pain; back pain; limitation of mobility; skin lesions; changes in skin color; focal weakness; blackouts; loss of consciousness due to a drop in blood pressure; seizures; paralysis; numbness; involuntary movement; memory impairment; head injury; tremors; psychosis; thyroid impairment; abnormal blood sugar; anemia; and immune problems.  CMH staff notes reflect that Wentz exhibited a pleasant demeanor and showed no signs of mental incapacity.  In short, CMH staff determined that Wentz was in generally good health and was medically stable.

23.     At approximately 6:43 p.m., Wentz underwent a CT scan, which revealed a foreign object in Wentz's rectum.  Based on the CT scan, and relying solely on the statements of the CVRJ officers—which statements were themselves conjecture—McCullough concluded that Wentz had a bag of heroin in his rectum.

24.     Wentz conceded that he was carrying a bag in his rectum, but insisted that the bag contained tobacco, and that he had wrapped the bag very well.

25.     At approximately 7:39 p.m., McCullough met with Wentz and requested permission to insert his fingers into Wentz's rectum, to see if he could remove the bag.  Wentz refused, stating that he wanted to pass the bag naturally.

26.     McCullough replied: "I could give you a laxative and wait, but I'm busy, and I don't have time for that."

27.     McCullough later suggested surgically removing the bag from Wentz's rectum with Wentz under general anesthesia.  Wentz again refused, due to the risks of anesthesia and concerns that the surgery itself could cause the bag to rupture.  Wentz reiterated his desire to pass the bag naturally.

28.     McCullough is a general surgeon, with no training or experience in contraband, in how plastic wrap behaves in the human body, or in plastics generally. No one at CMH, including McCullough, asked Wentz how he had wrapped the bag that Wentz conceded he was carrying in his rectum.  Before deciding to invade Wentz and before invading Wentz, no one at CMH, including McCullough, tested Wentz's blood or urine for the presence of opioids or their metabolites.  No one at CMH, including McCullough, asked Wentz when he had last used any opioid, including heroin.

29.     McCullough's assessment of Wentz's condition was hypothetical. McCullough had no information to confirm that the item in Wentz's rectum was a bag of heroin, or that such bag had ruptured or was about to rupture.  Indeed, the information then available to McCullough ruled out the possibility that a bag of heroin had ruptured in Wentz's rectum: heroin toxicity presents with low blood pressure and pulse, whereas Wentz's blood pressure and pulse were *elevated*.  And CMH staff observed Wentz to be clear-headed and cogent, which is inconsistent opioid toxicity.

30.     In the evening of July 29, 2016, Defendants were faced with a mentally competent patient who, after having been informed of the potential consequences, made an informed decision to accept the risk of leaving the bag in his rectum and passing it naturally, rather than facing the risks of surgery.   That should have been the end of the story.  It was not.

31.     Rather than accepting Wentz's refusal of surgery, McCullough contacted Huffman at CVRJ and sought Huffman's consent to perform surgery on Wentz.  But McCullough did not

inform Huffman that McCullough wished to perform an extraction of the bag from Wentz's rectum. Instead, McCullough told Huffman that McCullough wished to perform an exploratory procedure using a scope. McCullough also failed to inform Huffman that Wentz was refusing surgery. In reliance on McCullough's incomplete report to Huffman, Huffman consented to the surgery.

32. But Huffman did not have the authority to consent to Wentz's surgery, even if Huffman had possessed full information. Wentz, being a competent adult, had constitutional and common law rights to refuse unwanted surgery, notwithstanding the fact that he was a jail inmate.

33. Following the phone conversation with Huffman, McCullough and Fernando prepared and filled in several consent forms for the surgery, knowing that Wentz did not consent.

34. One form purported to give consent for Wentz to be placed under general anesthesia. The form stated that anesthesia carries significant risks, including

> injury to the eyes and teeth, damage to the vocal cords, croup, apnea, pneumonia, and other respiratory problems which may result in periods of low oxygenation, pain and discomfort, loss of sensation, headaches, infection, allergic reaction, awareness during general anesthesia, jaundice, bleeding, nerve injury, blood clot, injury to arteries and veins, heart attack, brain damage, and even *loss of bodily function or life*. Rarely, the administrations of blood or blood products may cause infection, transfusion reaction, or *death*.

(emphasis added).

35. Fernando signed the anesthesia consent form on behalf of CMH, and also signed Huffman's name as a person authorized to consent on behalf of Wentz, although Huffman was not authorized to consent on behalf of Wentz (and was not aware that he was consenting over Wentz's objection).

36. Another form purported to give consent for the surgery itself. The form stated that the results of the surgery "cannot be guaranteed," and stated that the risks of the surgery included

7

"bleeding, infection, and damage to nearby tissues, vessels, nerves, or organs, cardiac arrest, brain damage, and/or *death*," and "incontinence." (emphasis added).

37.     The form stated that the alternative to the surgery was "observation," which could potentially lead to "hemodynamic instability," *i.e.* blood pressure too low to support adequate blood flow to the body's organs, and "death."

38.     Wentz *never* showed any signs of hemodynamic instability while at CMH, as McCullough later acknowledged under oath. Indeed, McCullough knew that Wentz had *elevated* blood pressure, not dangerously low blood pressure.

39.     CMH's surgical consent form did not mention the possibility of giving Wentz a laxative to help him pass the bag, or of administering naloxone if Wentz began to show signs of opioid toxicity. Naloxone is a drug that binds to opioid receptors and counteracts the effects of opioid overdose. Naloxone is on the World Health Organization's core list of essential medicines, meaning that it is among "the most efficacious, safe, and cost-effective medicines," and is part of the "minimum medicine needs for a basic health care system."[1] CMH's form did not address why performing a surgery that carried the risk of death, based on a hypothetical risk of overdose, was preferable to allowing Wentz to pass the bag naturally, using naloxone to counteract an overdose if that hypothetical risk actually materialized. CMH's form did not address why Wentz could not be treated with naloxone prophylactically to prevent any hypothetical risk of overdose.

40.     McCullough signed CMH's surgical consent form on behalf of CMH, and signed Huffman's name on the form as Wentz's "legal representative," despite the fact that Huffman was

---

[1] *See* www.who.int/medicines/publications/essentialmedicines/20th_EML2017_FINAL_amendedAug2017.pdf?ua=1 (last visited July 27, 2018).

8

not Wentz's legal representative (and was not aware that he was consenting over Wentz's objection).

41. Another CMH form purported to give "informed consent for transfusion of blood or blood products." A CMH staff member named "Phyllis" signed on behalf of CMH, and noted Huffman as having provided verbal consent as a "person legally authorized to consent for patient," despite the fact that Huffman was not legally authorized to consent for Wentz (and was not aware that he was consenting over Wentz's objection).

42. Neither McCullough nor any other Defendant actually explained all of the risks listed on the various consent forms to Huffman before obtaining Huffman's purported consent. Thus, even assuming that Huffman was legally authorized to consent to treatment on Wentz's behalf and over Wentz's objection, and further assuming that Huffman was aware that his consent was over Wentz's objection, Huffman lacked sufficient information to give informed consent.

43. As McCullough was about to begin the surgery, Wentz saw a tray of tools next to a gurney, and asked McCullough what they were for. McCullough responded: "That's what I'm going to use to go inside you." With that, Wentz grew frantic. Right up until the moment that he was placed under anesthesia, Wentz begged to be allowed to pass the bag naturally. "Let me shit it out," he cried. McCullough replied: "Well shit it on yourself right now. I'll give you a minute." McCullough refused to let Wentz go to the bathroom, insisting instead that Wentz defecate on himself while shackled on the hospital bed. Wentz tried to defecate while lying on his back in shackles. But Wentz could not move his bowels.

44. After only a few seconds of watching Wentz trying to defecate while lying on his back amid a fully staffed operating room, McCullough stated: "I'm tired of playing games." McCullough then ordered Wentz to be placed under anesthesia. At this point, Wentz began to

physically resist. Wentz removed the IV from his arm and had to be physically held down while it was reinserted. Fernando then placed Wentz under anesthesia.

45. At approximately 12:24 a.m. on July 30, 2016, McCullough, with the assistance of Fernando, Brushwood, Brock, and Smith, perpetrated an egregiously sexually invasive, unjustified, compelled surgery on Wentz, penetrating Wentz's anus and rectum with multiple different implements in the process. McCullough removed two well-wrapped bags containing heroin.

46. Following McCullough's invasion, Wentz bled from his anus and rectum for three days. Wentz's anus and rectum were in excruciating pain for a week.

47. Wentz's condition remained stable from the time he arrived at CMH through the time of the invasion. Wentz's was never in a state of medical emergency, and could have passed the bags naturally. McCullough's purported concern for Wentz's health was a mere pretext to allow McCullough to perform an unwanted invasion on Wentz because, in McCullough's words, "I'm busy and I don't have time" to allow Wentz to void his bowel naturally or with the help of a laxative.

48. During the run-up to the invasion, McCullough had extensive contact with members of CMH's administration, who explicitly approved McCullough's course of conduct.

49. At all relevant times, Defendants acted under color of state law, because they treated Wentz upon referral by a government agency with the knowledge that Wentz was a prisoner, thereby voluntarily assuming the state's obligation to provide medical care to Wentz.

50. At all relevant times, Defendants, and each of them, acted with malice or with recklessness akin to malice against Wentz.

**COUNT I**
**42 U.S.C. § 1983**
**Eighth Amendment Violation**
**(Against All Defendants)**

51.     Wentz incorporates Paragraphs 1 through 50 by reference.

52.     By performing an egregiously sexually invasive, unjustified, and compelled surgery on Wentz with utter disregard for Wentz's repeated refusals, McCullough, Fernando, Brushwood, Brock, and Smith violated Wentz's Eighth Amendment right to be free of cruel and unusual punishment.

53.     By explicitly authorizing an egregiously sexually invasive, unjustified, and compelled surgery on Wentz with utter disregard for Wentz's repeated refusals, CMH violated Wentz's Eighth Amendment right to be free of cruel and unusual punishment.

54.     Defendants' actions caused Wentz to suffer substantial pain, anxiety, anguish, fear, depression, and humiliation.

WHEREFORE, Wentz respectfully requests that the Court:

A.     Enter judgment in Wentz's favor for compensatory and punitive damages in an amount to be established at trial, but not less than $5 million;

B.     Award Wentz reasonable attorneys' fees and costs, including any expert fees, necessary to maintaining this action; and

C.     Award Wentz such other and further relief as justice may require.

**COUNT II**
**42 U.S.C. § 1983**
**Fourteenth Amendment Violation**
**(Against All Defendants)**

55.     Wentz incorporates Paragraphs 1 through 50 by reference.

11

56. By performing an egregiously sexually invasive, unjustified, and compelled surgery on Wentz with utter disregard for Wentz's repeated refusals, McCullough, Fernando, Brushwood, Brock, and Smith violated Wentz's Fourteenth Amendment right to refuse unwanted medical treatment.

57. By explicitly authorizing an egregiously sexually invasive, unjustified, and compelled surgery on Wentz with utter disregard for Wentz's repeated refusals, CMH violated Wentz's Fourteenth Amendment right to refuse unwanted medical treatment.

58. Defendants' actions caused Wentz to suffer substantial pain, anxiety, anguish, fear, depression, and humiliation.

WHEREFORE, Wentz respectfully requests that the Court:

A. Enter judgment in Wentz's favor for compensatory and punitive damages in an amount to be established at trial, but not less than $5 million;

B. Award Wentz reasonable attorneys' fees and costs, including any expert fees, necessary to maintaining this action; and

C. Award Wentz such other and further relief as justice may require.

## COUNT III
### Battery
### (Against McCullough, Fernando, Brushwood, Brock, and Smith)

59. Wentz incorporates Paragraphs 1 through 50 by reference.

60. By performing an egregiously sexually invasive, unjustified, and compelled surgery on Wentz with utter disregard for Wentz's repeated refusals, McCullough, Fernando, Brushwood, Brock, and Smith intentionally made physical contact with Wentz against Wentz's will.

61. Defendants' actions caused Wentz to suffer substantial pain, anxiety, anguish, fear, depression, and humiliation.

WHEREFORE, Wentz respectfully requests that the Court:

A. Enter judgment in Wentz's favor for compensatory damages in an amount to be established at trial, but not less than $5 million, and punitive damages in the amount of $350,000; and

B. Award Wentz such other and further relief as justice may require.

### COUNT IV
### Conspiracy
### (Against All Defendants)

62. Wentz incorporates Paragraphs 1 through 50 by reference.

63. By performing (in the case of McCullough, Fernando, Brushwood, Brock, and Smith), and explicitly authorizing the performance of (in the case of CMH), a sexually invasive, unjustified, and compelled surgery on Wentz with utter disregard for Wentz's repeated refusals, Defendants, through concerted action, accomplished a battery on Wentz.

64. Defendants' actions caused Wentz to suffer substantial pain, anxiety, anguish, fear, depression, and humiliation.

WHEREFORE, Wentz respectfully requests that the Court:

A. Enter judgment in Wentz's favor for compensatory damages in an amount to be established at trial, but not less than $5 million, and punitive damages in the amount of $350,000; and

B. Award Wentz such other and further relief as justice may require.

### JURY DEMAND

Wentz demands a trial by jury as to all issues so triable.

DATED:  July 27, 2018    /s/ *Robert O. Wilson*
Robert O. Wilson (VSB 77791)
**WILSON LAW PLC**
2 South Main Street, Suite 409
Harrisonburg, Virginia  22802
Phone: (540) 430-0122
Email:  robert@thewilsonlaw.com

*Counsel for Plaintiff*

**OF COUNSEL:**

Mitchell J. Rotbert
(*pro hac vice* motion forthcoming)
**ROTBERT BUSINESS LAW P.C.**
8937 Shady Grove Court
Gaithersburg, Maryland 20877
Phone: (240) 600-6467
Fax: (888) 913-207
Email:  mitch@rotbertlaw.com